UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| HELENE GOTTLIEB, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>RICHARD S. WILLIS; BRADLEY J. SHISLER; KATHLEEN P. IVERSON; DAVID F. DALVEY; FREDERICK C. GREEN IV; KEITH A. BENSON; TIMOTHY R. GENTZ; TOM F. WEYL; NAVARRE CORPORATION; SFC ACQUISITION CO., INC.; and SPEEDFC, INC.<br><br>Defendants. | Case No. 12-CV-2637 (PJS/JSM)<br><br>ORDER |

---

William Scott Holleman and Shannon L. Hopkins, LEVI & KORSINSKY, LLP; Karen H. Riebel and Gregg M. Fishbein, LOCKRIDGE GRINDAL NAUEN P.L.L.P., for plaintiff.

Peter W. Carter and Michelle S. Grant, DORSEY & WHITNEY LLP, for defendants Richard S. Willis, Bradley J. Shisler, Kathleen P. Iverson, David F. Dalvey, Frederick C. Green IV, Keith A. Benson, Timothy R. Gentz, Tom F. Weyl, Navarre Corporation, and SFC Acquisition Co., Inc.

Bret A. Puls and Marie L. Van Uitert, OPPENHEIMER WOLFF & DONNELLY LLP, for defendant SpeedFC, Inc.

Plaintiff Helene Gottlieb is a shareholder of defendant Navarre Corporation ("Navarre"). Navarre recently announced that it has entered into a merger agreement with defendant SpeedFC, Inc. ("SpeedFC"), pursuant to which SpeedFC will be merged into Navarre's wholly owned subsidiary, defendant SFC Acquisition Co., Inc. Gottlieb alleges that, in connection with this proposed transaction, the individual members of Navarre's board of directors breached their

fiduciary duty to disclose material information to shareholders and, along with Navarre, violated § 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a).  Gottlieb further contends that SpeedFC and SFC Acquisition Co., Inc. aided and abetted the individual defendants' breaches of fiduciary duty.  Gottlieb brings her fiduciary-duty claims on behalf of a putative class of Navarre shareholders.  Compl. ¶ 1.

This matter is before the Court on Gottlieb's motion for a preliminary injunction.  Gottlieb asks the Court to enjoin the proposed merger until defendants disclose additional information to shareholders.  Gottlieb's motion is denied for the reasons explained below.

## I.  BACKGROUND

Navarre is a Minnesota corporation that provides services to retailers and manufacturers, including retail-distribution programs, e-commerce fulfillment, and third-party logistics services.  Compl. ¶¶ 14, 32.  Navarre is publicly traded on the NASDAQ stock market and, as of September 24, 2012, had 37,193,454 shares of common stock outstanding.  Compl. ¶ 32.  The individual defendants are all members of Navarre's board of directors; defendant Richard Willis is also Navarre's president and CEO.  Compl. ¶¶ 15-22.

SpeedFC, which was founded in 2000, is a privately owned Delaware corporation that is headquartered in Texas.  Compl. ¶¶ 24, 33.  SpeedFC is a provider of e-commerce services to online retailers and manufacturers.  Compl. ¶ 33.  Jeffrey Zisk is SpeedFC's CEO and controlling stockholder; he owns approximately 59.4 percent of the fully diluted voting power of SpeedFC.  Compl. ¶ 33.

On September 27, 2012, Navarre and SpeedFC announced an agreement through which Navarre will acquire SpeedFC for a total initial consideration of $50 million, as well as

additional consideration that is contingent on SpeedFC's achievement of certain performance goals.  Compl. ¶ 34.  The initial consideration consists of $25 million in cash and 17,095,186 shares of Navarre common stock valued at a total of $25 million.  Compl. ¶ 35.  If SpeedFC achieves certain performance levels in 2012, SpeedFC's equity holders will receive additional cash and shares of Navarre stock.  Compl. ¶¶ 36-37.  After the transaction closes, Zisk will become a member of Navarre's board of directors and the president of the surviving subsidiary corporation.  Compl. ¶ 40; Hopkins Decl. Ex. A at 28.  Before entering into the agreement, Navarre obtained an opinion from Roth Capital Partners, LLP ("Roth") that the consideration that Navarre will pay is fair to Navarre.  Hopkins Decl. Ex. A at 20.

On October 10, 2012, Navarre filed a Schedule 14A proxy statement with the Securities and Exchange Commission ("SEC").  Compl. ¶ 7.  In the proxy statement, Navarre's board of directors seeks the approval of Navarre's shareholders to issue the shares necessary to acquire SpeedFC.  Compl. ¶ 7.  This approval is necessary under NASDAQ's rules and is a condition to the consummation of the transaction.  Compl. ¶ 7.  The shareholder vote is to occur at Navarre's annual shareholder meeting, which was originally scheduled for November 8, 2012, Compl. ¶ 7; recently, however, that meeting was postponed until November 20, 2012.[1]

---

[1] At oral argument on Gottlieb's motion, the parties informed the Court that the merger agreement had been amended and that, because of the amendment (and because of the recent hurricane on the East Coast), the shareholder meeting was being postponed.  Navarre later informed the Court that the shareholder meeting will be held on November 20.  ECF No. 21.  Navarre also provided a link to the proxy statement supplement that it filed with the SEC on November 2 concerning the amended agreement.  ECF No. 21.

The supplement explains that the contingent consideration has been amended to decrease the cash component to $5 million (from the original $10 million) and increase the stock component to 6,287,368 shares (from the original 3,333,333 shares).  The supplement also explains that Roth has opined that this amended consideration is fair to Navarre.  Neither party

Gottlieb alleges that the proxy statement fails to disclose material information necessary for Navarre's shareholders to make an informed decision about whether to approve the issuance of shares necessary for the merger. Compl. ¶ 8. Broadly speaking, Gottlieb alleges that the proxy statement is deficient in three areas: (1) it fails to disclose certain financial information, including the companies' financial forecasts, the amount of cost savings and other synergies that are expected to be realized from the merger, and details concerning Roth's analysis of the transaction; (2) it fails to disclose certain details concerning Roth's conflict of interest; and (3) it fails to disclose the strategic alternatives that Navarre considered. Compl. ¶ 8.

Gottlieb filed this action on October 16, 2012 and, about a week later, filed a motion to preliminarily enjoin the transaction until defendants make a full disclosure to Navarre's shareholders. The Court held oral argument on the motion on November 1, 2012.

## II. ANALYSIS

### A. Standard of Review

A court must consider four factors in deciding whether to grant a preliminary injunction: (1) the movant's likelihood of success on the merits; (2) the threat of irreparable harm to the movant if the injunction is not granted; (3) the balance between this harm and the injury that granting the injunction will inflict on the other parties; and (4) the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981). Preliminary injunctions are extraordinary remedies, and the party seeking such relief bears the burden of establishing her entitlement to an injunction under the *Dataphase* factors. *Watkins Inc. v. Lewis*, 346 F.3d 841,

---

has contended that this new information affects the Court's consideration of Gottlieb's motion, and the Court therefore has not considered it in its analysis.

844 (8th Cir. 2003). If a party's likelihood of succeeding on the merits is sufficiently low, a court may deny a preliminary injunction even if the other three factors — irreparable harm, balance of harms, and the public interest — weigh in the party's favor. *See CDI Energy Servs., Inc. v. W. River Pumps, Inc.*, 567 F.3d 398, 402 (8th Cir. 2009) ("the absence of a likelihood of success on the merits strongly suggests that preliminary injunctive relief should be denied"); *Mid-America Real Estate Co. v. Iowa Realty Co.*, 406 F.3d 969, 972 (8th Cir. 2005) ("an injunction cannot issue if there is no chance of success on the merits").

B. Likelihood of Success

1. Section 14(a)

Section 14(a) of the Securities Exchange Act, 15 U.S.C. § 78n(a), makes it unlawful to solicit a proxy in violation of SEC rules. Gottlieb alleges that the Navarre proxy statement violates Rule 14a-9, 17 C.F.R. § 240.14a-9, which states, in relevant part:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading . . . .

Claims under § 14(a) are subject to the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(b). *Little Gem Life Sciences LLC v. Orphan Med., Inc.*, 537 F.3d 913, 916-17 (8th Cir. 2008). In order to state a § 14(a) and Rule 14a-9 claim under the PSLRA, a plaintiff must, among other things, identify each statement alleged to have been misleading and the reason why the statement is misleading. *Id.*; *see also Resnik v. Swartz*, 303 F.3d 147, 151 (2d Cir. 2002) ("omission of information from a proxy statement will violate [§ 14(a) and Rule 14a-9] if either

the SEC regulations specifically require disclosure of the omitted information in a proxy statement, or the omission makes other statements in the proxy statement materially false or misleading").

Gottlieb does not cite a single statement in the proxy statement that she says is false or misleading. Instead, she cites various truthful statements made in the proxy statement and argues, in essence, that defendants must tell her more about the subject of those statements. In arguing that § 14(a) and Rule 14a-9 impose an affirmative duty on directors to disclose all material information to shareholders — even if that information is not necessary to prevent other statements from being false or misleading — Gottlieb relies on broad language from cases concerning materiality. But the element of *materiality* is distinct from the element of a *false or misleading statement*. Gottlieb's reading of § 14(a) and Rule 14a-9 is inconsistent with both the plain language of those provisions and *Little Gem*, which requires plaintiffs to identify a false or misleading statement.[2] Because Gottlieb has not identified any such statement in the proxy statement, she has not demonstrated a likelihood of success on her § 14(a) claim.

## 2. Fiduciary Duty

Gottlieb next contends that the board members breached their fiduciary duty under Minnesota law to disclose material information to shareholders. Although Gottlieb acknowledges that her claim arises under Minnesota law, she relies heavily on Delaware law and contends that Minnesota courts would apply the same standards that Delaware courts apply to determine the scope of a director's duty to disclose.

---

[2]Some of the SEC's rules regarding proxies do create an affirmative duty to disclose certain information. *See, e.g.*, 17 C.F.R. § 240.14a-101 (specifying certain information that must be included in proxy statements). Gottlieb does not allege a violation of any of these rules.

The Court does not believe that Gottlieb has shown that she is likely to succeed on her fiduciary-duty claim. To begin with, as the parties candidly acknowledge, Minnesota law in this area is somewhat underdeveloped. It is therefore not entirely clear whether, under these circumstances, Minnesota would impose a common-law duty to disclose information in a proxy statement beyond what is required by federal securities laws or relevant state statutes. Even if Minnesota would require the disclosure of additional information, the Court doubts that Minnesota would go as far as some Delaware lower courts have gone in requiring information to be disclosed. And even if Minnesota courts would go as far as those Delaware courts, the cases on which Gottlieb relies are distinguishable. Finally, and perhaps most importantly, the Court has been presented with absolutely no evidence — save the proxy statement itself — concerning the merits of Gottlieb's claim. Gottlieb has not submitted so much as a declaration averring that the information she seeks would be material to her vote, much less an expert affidavit stating that a reasonable investor would likely find the omitted information material.[3] Nor has Gottlieb shown that the financial information she seeks — such as the companies' financial forecasts — are reliable and themselves not misleading. Given both the uncertain state of the law and the sparse state of the record, the Court simply cannot say that Gottlieb is likely to succeed on the merits of her breach-of-fiduciary-duty claim.

Turning to the specifics of Gottlieb's arguments:

---

[3] Indeed, the only "expert" evidence before the Court is the reaction of the market to the announcement of the merger, which was positive: The price of Navarre's stock rose from $1.41 per share on the day before the merger was announced to $1.57 per share on the day after. *See* http://finance.yahoo.com/q/hp?s=NAVR+Historical+Prices.

Under Delaware law, directors are required to "disclose fully and fairly all material information within the board's control when they seek shareholder action." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 199 (Del. Ch. 2007) (citation and quotations omitted). A fact is material if there is a "substantial likelihood that [its] disclosure . . . would have been viewed by the reasonable stockholder as having significantly altered the total mix of information made available." *Loudon v. Archer-Daniels-Midland Co.*, 700 A.2d 135, 143 (Del. 1997) (citation and quotations omitted). But "[o]mitted facts are not material simply because they might be helpful," and shareholders are not entitled to demand "all the financial data they would need if they were making an independent determination of fair value." *Skeen v. Jo-Ann Stores, Inc.*, 750 A.2d 1170, 1174 (Del. 2000). "So long as the proxy statement, viewed in its entirety, sufficiently discloses and explains the matter to be voted on, the omission or inclusion of a particular fact is generally left to management's business judgment." *In re 3Com S'holders Litig.*, No. 5067-CC, 2009 WL 5173804, at *1 (Del. Ch. Dec. 18, 2009).

In this case, the proxy statement contains detailed financial data about SpeedFC, including consolidated balance sheets, statements of operations, changes in stockholders' equity, and cash-flow statements for fiscal years 2010 and 2011; consolidated interim financial statements as of June 30, 2012; selected historical financial data going back to 2007; an explanation of SpeedFC's accounting policies and practices; information about SpeedFC's services, customer base, assets, business partnerships, and credit agreements; and SpeedFC management's analysis of SpeedFC's financial condition and results of operations. Hopkins Decl. Ex. A at 42-50 & Apps. A, B. The proxy statement also contains a combined balance sheet

and a statement of operations for Navarre and SpeedFC that were prepared as if the merger had already occurred. Hopkins Decl. Ex. A at 34-42.

Gottlieb contends that this is not enough information to make an informed judgment as to whether Navarre's acquisition of SpeedFC is advisable. In order to cast an informed vote, Gottlieb claims, she must have SpeedFC's and Navarre's financial forecasts and Navarre's predictions as to the amount of cost savings and other synergies that will be realized from the proposed transaction. On its face, this argument contradicts the Delaware Supreme Court's holding in *Skeen*, in which the court rejected the plaintiffs' claim for disclosure of financial projections and other additional information because the company had already disclosed "basic financial data," including the company's financial statements, quarterly market prices, and dividends. *Skeen*, 750 A.2d at 1173-74.

Notwithstanding *Skeen*, some lower courts in Delaware have held that shareholders may be entitled to financial projections in certain circumstances. *See, e.g.*, *Maric Capital Master Fund, Ltd. v. Plato Learning, Inc.*, 11 A.3d 1175, 1178 (Del. Ch. 2010); *In re Netsmart*, 924 A.2d at 201-04. These cases, however, arise in the context of cash-out mergers, where the shareholders of the *target* company are seeking information to help them decide whether to accept a particular price for their shares or (assuming that the merger goes forward) exercise their appraisal rights. *Maric Capital*, 11 A.3d at 1178; *In re Netsmart*, 924 A.2d at 177. The cases stress the importance of information about projections in these particular circumstances:

> When stockholders must vote on a transaction in which they would receive cash for their shares, information regarding the financial attractiveness of the deal is of particular importance. This is because the stockholders must measure the relative attractiveness of retaining their shares versus receiving a cash payment, a

>     calculus heavily dependent on the stockholders' assessment of the
>     company's future cash flows.

*In re Netsmart*, 924 A.2d at 200 (footnotes omitted).

This, however, is not a cash-out-merger case.  Instead, Navarre shareholders are being asked to judge the desirability of acquiring SpeedFC in the context of Navarre's continued operation as a going concern.  Although projections of Navarre's and SpeedFC's future performance might nevertheless be helpful, they remain individual pieces of an overall financial picture.  In contrast, in the cash-out-merger context, projections are of more immediate importance to shareholders who are confronted with the choice of accepting a one-time payment of cash or (if the merger goes forward) taking a chance on their appraisal rights.  In that context, the shareholders' decision turns almost entirely on the current value of the stock, which, as *Maric Capital* observed, "should be premised on the expected future cash flows of the corporation . . . ."  *Maric Capital*, 11 A.3d at 1178.

Thus, even accepting Gottlieb's premise that Minnesota courts would adopt the far-reaching interpretation of Delaware law embraced by *Maric* and *Netsmart*, the Court cannot say that Gottlieb has shown a likelihood of success on her claim that she is entitled to the projections.  This is particularly so because Gottlieb has offered no evidence about the reliability of these projections, other than that they were considered by the board and Roth.  This is not sufficient to require their disclosure.  *See In re PNB Holding Co. S'holders Litig.*, No. Civ. A. 28-N, 2006 WL 2403999, at *16 (Del. Ch. Aug. 18, 2006) ("our law has refused to deem projections material unless the circumstances of their preparation support the conclusion that they are reliable enough to aid the stockholders in making an informed judgment"); *In re Checkfree Corp. S'holders*

*Litig.*, No. 3193-CC, 2007 WL 3262188, at *2-3 (Del. Ch. Nov. 1, 2007) (fact that financial advisor considered financial projections did not automatically require their disclosure).

The remainder of Gottlieb's claims fare no better. Gottlieb seeks additional information underlying Roth's analysis of the merger price, including the identity of the companies and transactions that were used for comparison purposes, the financial multiples that factored into the analysis, the criteria Roth used to select the multiples, and — with respect to the discounted cash-flow analysis — a wealth of various inputs such as the free cash-flow forecasts, Navarre's weighted average cost of capital, the range of values to corresponding EBITDA amounts, any probabilities attached to these values/EBITDA amounts, the reasons why Roth valued the stock consideration at $1.50 per share, and the relative weight of the different analyses and inputs.

It appears to the Court (which, admittedly, is not knowledgeable about matters of high finance) that Gottlieb is essentially seeking the data necessary to *replicate* Roth's analysis. But Delaware law is clear that shareholders are entitled to no more than a "fair *summary*" of the financial advisor's work. *In re Checkfree*, 2007 WL 3262188, at *2-3 (emphasis added); *see also Skeen*, 750 A.2d at 1174 (shareholders are not entitled to "all the financial data they would need if they were making an independent determination of fair value"); *In re Staples, Inc. S'holders Litig.*, 792 A.2d 934, 954 (Del. Ch. 2001) ("the duty did not extend to the provision of information to permit stockholders to make 'an independent determination of fair value'" (quoting *Skeen*)). Here, the proxy statement discloses Roth's entire fairness opinion; the information Roth relied on and the types of analyses it performed; the estimates of SpeedFC's value generated by Roth's various analyses; and the mean and median enterprise-value-to-EBITDA multiples generated in Roth's comparable-companies analysis. Hopkins Decl. Ex. A

at 23-26 & App. C.  Given these disclosures, the Court does not believe that Gottlieb has shown a likelihood of success on her claim that defendants have not met the "fair summary" standard and that she is entitled to additional information about Roth's analysis.

Gottlieb also seeks additional information concerning Roth's conflict of interest.  The proxy statement discloses that $200,000 of Roth's $250,000 fee for the fairness opinion is contingent on the consummation of the merger.  Hopkins Decl. Ex. A at 26.  The proxy statement also discloses that, in addition to rendering a fairness opinion, Roth will serve as the placement agent for the financing Navarre will need if the merger is approved.  Hopkins Decl. Ex. A at 26.  The statement discloses the details concerning how Roth's placement fee will be calculated and Navarre's estimate that $35 million in financing will need to be arranged by Roth.  Hopkins Decl. Ex. A at 26.  In short, the proxy statement makes it abundantly clear that Roth has a large financial stake in the merger being consummated.

Despite these disclosures, Gottlieb contends that she needs additional information so as to more precisely gauge the nature of Roth's conflict of interest, including the amount that Navarre intends to finance through debt; when and why Roth was retained for these roles in the transaction; whether Navarre considered retaining anyone else; and what role Roth may have played during Navarre's evaluation of strategic alternatives.  These demands appear to the Court to border on the frivolous.  The proxy statement discloses detailed information concerning the large fees that Roth has riding on the consummation of the merger and makes it obvious that, in opining on the fairness of the transaction, Roth has a conflict of interest.  The additional information Gottlieb seeks would not illuminate that point in any meaningful way.  *See Cnty. of York Emps. Ret. Plan v. Merrill Lynch & Co.*, No. 4066-VCN, 2008 WL 4824053, at *11 (Del.

Ch. Oct. 28, 2008) ("this Court has held that the precise amount of consideration need not be disclosed, and that simply stating that an advisor's fees are partially contingent on the consummation of a transaction is appropriate").

Finally, Gottlieb contends that she is entitled to information about the strategic alternatives considered by the company. Like Gottlieb's arguments concerning Roth's conflict of interest, this argument, too, appears to border on the frivolous. "Delaware law does not require management to discuss the panoply of possible alternatives to the course of action it is proposing . . . ." *In re 3Com*, 2009 WL 5173804, at *6 (citation and quotations omitted); *see also David P. Simonetti Rollover IRA v. Margolis*, No. 3694-VCN, 2008 WL 5048692, at *12 (Del. Ch. June 27, 2008) ("In the usual case, where a board has not received a firm offer or has declined to continue negotiations with a potential acquirer because it has not received an offer worth pursuing, disclosure is not required."); *Globis Partners, L.P. v. Plumtree Software, Inc.*, No. 1577-VCP, 2007 WL 4292024, at *14 (Del. Ch. Nov. 30, 2007) (rejecting plaintiff's demand for disclosure of other potential merger partners where there was no indication of director malfeasance).

In short, having examined all of Gottlieb's arguments in the limited time available, the Court concludes that Gottlieb is not likely to succeed on the merits of her claim that defendants have breached their fiduciary duties to her.

### C. Balance of Harms and the Public Interest

Gottlieb argues that being deprived of her right to cast an informed vote will cause her irreparable harm because stock transactions and mergers are difficult to unscramble and because the harm to her interests as a shareholder is difficult to quantify. As a general matter, the Court

agrees that, in cases of this type, the shareholder faces some risk of irreparable harm.  At the same time, however, that risk must be balanced against the risk that the Court might inflict irreparable harm by enjoining the merger.  Although Gottlieb downplays the harm of an injunction as speculative, the Court agrees with defendants that enjoining a large and complex transaction such as this will at a minimum create uncertainty and delay.  Such a delay could also impose costs on the participants in the form of the lost time value of money, and ultimately could even jeopardize the transaction.  *See In re Dollar Thrifty S'holder Litig.*, 14 A.3d 573, 617-18 (Del. Ch. 2010); *In re Checkfree*, 2007 WL 3262188, at *4.  Under these circumstances, and in light of Gottlieb's failure to show a likelihood of success on the merits, the public interest dictates that Gottlieb's motion be denied.

The Court's conclusion is bolstered by the fact that, of Navarre's 37,193,454 outstanding shares, Gottlieb has not alleged how many she owns, nor (as noted above) has she explained in a declaration why she needs the sought-after information in order to cast an informed vote.  Thus, for all the Court knows, the Court is being asked to enjoin a $50 million transaction by a person who owns no more than a single share of Navarre stock (worth less than $2) and who has no real interest in the omitted information.  The Court does not mean to say that shareholders who own only a few shares do not have a right to cast an informed vote.  But it is difficult to justify the extraordinary remedy of a preliminary injunction of a complex transaction affecting thousands of people — including hundreds of employees of Navarre and SpeedFC — on the strength of a single shareholder's complaint and in the absence of any evidence that the sought-after

information has any practical value to her or any other shareholder.[4]  Given that Gottlieb is unlikely to succeed on the merits, such a remedy cannot be justified in this case.

ORDER

Accordingly, based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT plaintiff's motion for a preliminary injunction [ECF No. 4] is DENIED.

LET JUDGMENT BE ENTERED ACCORDINGLY.


Dated:  November 7, 2012                    s/Patrick J. Schiltz
                                            Patrick J. Schiltz
                                            United States District Judge

---

[4]Gottlieb points out that she seeks relief on behalf of a class.  At this stage, however, it is too early to determine whether a class should be certified and, more importantly, the fact that Gottlieb pleaded claims for class relief does not demonstrate that other Navarre shareholders share her desire to enjoin the merger.  It is true, as Gottlieb points out, that another individual recently filed an essentially identical case.  *See Pokoik v. Willis et al.*, No. 12-CV-2752 (PJS/JSM) (filed Oct. 29, 2012).  The fact that a second person who also owns an unknown number of Navarre's 37,193,454 outstanding shares of common stock has also decided to file a lawsuit does not, in the Court's view, appreciably shift the balance of the harms.