HELENE GOTTLIEB, individually and
on behalf of all others similarly situated,

                    Plaintiff,

v.

RICHARD S. WILLIS, et al.
                    Defendants.

Lead Case No. 12-CV 2637(PJS/JSM)
Judge Patrick J. Schiltz
Magistrate Judge Janie S. Mayeron

**AMENDED CONSOLIDATED
CLASS ACTION COMPLAINT**

<u>**Jury Trial Demanded**</u>

Plaintiff Davin Pokoik ("Plaintiff") by his attorneys, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

1.      This action arises out of the Navarre Corporation ("Navarre" or the "Company") Board of Directors' (the "Board") failure to provide essential material information necessary for Navarre's public shareholders to make an informed decision regarding Navarre's acquisition of SpeedFC, Inc. ("SpeedFC"). Shareholder approval of the issuance of new Navarre shares was a prerequisite for the close of the transaction. However, rather than provide shareholders with sufficient material information to make an informed decision regarding the share issuance, the Board instead withheld material information readily in its possession, in contravention of its duty of candor.

2.      On September 27, 2012, Navarre and SpeedFC announced a definitive agreement under which Navarre, through its wholly owned subsidiary SFC Acquisition

Co., Inc. ("Merger Sub"), would acquire the privately-owned SpeedFC for initial consideration of $50 million in cash and stock, as well additional contingent consideration based on SpeedFC's achievement of certain performance goals (the "Transaction").

3.     The initial consideration in the Transaction was comprised of $25.0 million in cash and 17,095,186 shares of Navarre common stock.  Additionally, if SpeedFC achieves certain levels of Adjusted EBITDA in 2012, SpeedFC's equity holders will receive consideration of up to an additional $5.0 million in cash and 6,287,368 shares of Navarre common stock (the "Contingent Consideration").

4.     In total, the maximum number of shares of common stock that the Company could be required to issue in connection with the Transaction to satisfy both the initial equity payment and the contingent equity payment obligations is 23,382,554 shares.  Shareholder approval of the share issuance was required under the rules and regulations of NASDAQ and was also a condition to the consummation of the Transaction.

5.     On October 10, 2012 the Company filed a Schedule 14A Proxy Statement (the Proxy") with the United States Securities and Exchange Commission (the "SEC") in connection with the Company's annual meeting scheduled for November 8, 2012 (the "Annual Meeting").  The Annual Meeting was later moved to November 20, 2012 due, in part, to weather events.  The Board, through the Proxy, sought shareholder approval of the issuance of 20,428,519 shares as consideration in the Transaction (the "Share Issuance").  The Board did not seek shareholder approval for the issuance of 2,954,035

additional shares that could be issued as a result of the Contingent Consideration. Moreover, the Proxy did not include essential material information needed for shareholders to evaluate the Share Issuance and, by extension, the Transaction.

6.     Absent material information, an uninformed vote took place at the Annual Meeting, whereby shareholders approved the Share Issuance.  The Transaction closed later that same day.

7.     Critically, the Navarre Board failed to provide shareholders with material information that it possessed – and which was necessary for the shareholders to make an informed decision – regarding (a) the financial forecasts of SpeedFC, which were relied upon by Roth Capital Partners, LLC ("Roth"), the Company's financial advisor, in evaluating the fairness of the Transaction; (b) material information concerning the *Comparable Company Analysis* conducted by Roth in rendering its fairness opinion, including the allegedly comparable companies considered by Roth; (c) material information concerning the *Precedent Transactions Analysis* conducted by Roth in rendering its fairness opinion, including the allegedly comparable transactions considered by Roth; (d) the amount of the anticipated costs savings and other synergies from the Transaction; (e) information concerning Roth's conflicts of interests in connection with the Transaction; (f) Navarre's ability to withstand new debt as a result of the Transaction; (g) the impact of the Transaction on the Company's ability to use net operating loss carryforwards ("NOLs"); and (h) the strategic alternatives considered by the Company.

8.     Absent the disclosure of the above-referenced material information, shareholders were unable to make an informed decision regarding the Share Issuance.

9.     The failure to disclose this material information constitutes a breach of the Board's fiduciary duties of loyalty, due care and candor.

10.     In support of the claims asserted herein, Plaintiff submits herewith the expert affidavit of Mary O'Connor ("O'Connor"), ASA, MRICS, Partner, Valuation and Dispute Advisory Services of Sikich LLC (the "O'Connor Affidavit").   O'Connor opined, *inter alia*, that Navarre's shareholders could not make an informed decision in voting their shares regarding the Share Issuance without additional material information.

11.     Additionally, Plaintiff submits herewith an affidavit which affirms that he did not vote his shares on the Share Issuance.  Plaintiff further affirms that he does not believe that the Navarre Board disclosed enough material information to allow him to make an informed decision regarding the Share Issuance.

12.     Plaintiff, on behalf of Navarre shareholders who were not given the material information necessary to make an informed decision on how to vote – information of which the Board was readily in possession – asks this Court to rescind the results of the November 20, 2012 vote regarding the Share Issuance, unwind the Transaction, order the dissemination of the omitted material information identified herein, and require an informed re-vote regarding the Share Issuance.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because Plaintiff and the Defendants are citizens of different states and the matter in controversy exceeds $75,000.00, exclusive of interests and costs.  The Transaction is valued at $50

million, not including the Contingent Consideration. Plaintiff is a citizen of Connecticut and no Defendant may claim Connecticut citizenship.

14.    This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

15.    Venue is proper in this district because Defendant Navarre is incorporated and headquartered in this district.

## PARTIES

16.    Plaintiff is, and has been at all relevant times, the owner of shares of common stock of Navarre. Plaintiff is a resident of Connecticut. As attested to by his affidavit filed contemporaneously with this Complaint, Plaintiff did not vote on the Share Issuance at the Annual Meeting. Moreover, Plaintiff does not believe that the Navarre Board disclosed critical material information necessary for him to make an informed decision regarding the Share Issuance.

17.    Defendant Richard S. Willis ("Willis") has been President and CEO of the Company since September 2011, and a director of the Company since 2011. Willis is a resident of Minnesota.

18.    Defendant Timothy R. Gentz ("Gentz") is the Chairman of the Board and has been a director of the Company since 2004. Gentz is a resident of Texas.

19.    Defendant Keith A. Benson ("Benson") has been a director of the Company since 2003. Benson is a resident of Minnesota.

20.    Defendant David F. Dalvey ("Dalvey") has been a director of the Company since 2009. Dalvey is a resident of Minnesota.

21.    Defendant Frederick C. Green IV ("Green") has been a director of the Company since 2009.  Green is a resident of Minnesota.

22.    Defendant Kathleen P. Iverson ("Iverson") has been a director of the Company since 2008.  Iverson is a resident of Minnesota.

23.    Defendant Bradley J. Shisler ("Shisler") has been a director of the Company since 2011.  Shisler is a resident of Texas.

24.    Defendant Tom F. Weyl ("Weyl") has been a director of the Company since 2001.  Weyl is a resident of Florida.

25.    Defendants Willis, Gentz, Benson, Dalvey, Green, Iverson, Shisler, and Weyl are collectively referred to as Individual Defendants and/or the Board.

26.    Defendant Navarre is incorporated under Minnesota state law. The Company maintains its principal executive offices at 7400 49th Avenue North, Minneapolis, Minnesota 55428.  Navarre is listed under NAVR on the NASDAQ market.

27.    Defendant Merger Sub is a Minnesota corporation wholly owned by Navarre that was created for the purposes of effectuating the Transaction.

28.    Nominal Defendant SpeedFC was a Delaware corporation with its headquarters located at 10300 Sanden Drive, Dallas, Texas 75238.  SpeedFC is named as a nominal defendant as it is a necessary party for the Court to decide all issues and make a proper judgment.

29.    The Individual Defendants, Navarre, Merger Sub and SpeedFC are sometimes referred collectively to hereinafter as the Defendants.

# CLASS ACTION ALLEGATIONS

30.     Plaintiff brings this action as a class action on behalf of owners of Navarre common stock as of September 27, 2012, the date of the announcement of the Transaction (the "Class").  Excluded from the Class are Defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

31.     The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class.  As of September 24, 2012, there were 37,193,454 shares of the Company's common stock outstanding. All members of the Class may be identified from records maintained by Navarre or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

32.     Questions of law and fact are common to the Class, including, the following:

>       (i)     Whether the Individual Defendants misrepresented and omitted material facts in violation of their fiduciary duties owed by them to Plaintiff and the other members of the Class;

>       (ii)    Whether SpeedFC and Merger Sub aided and abetted the Individual Defendants' breaches of fiduciary duty; and

>       (iii)   Whether Navarre's public shareholders have been harmed as a result of Defendants' misconduct alleged herein.

33.     Plaintiff's claims are typical of the other members of the Class.  Plaintiff and the other members of the Class have sustained damages as a result of Defendants' wrongful conduct, as alleged herein.

34.     Plaintiff will fairly and adequately protect the interests of the Class; and has no interests contrary to, or in conflict with, those of the Class that Plaintiff seeks to represent.

35.     Defendants have acted on grounds generally applicable to the class, thus final injunctive relief, with respect to the Class as a whole, is appropriate.

## SUBSTANTIVE ALLEGATIONS

**Background**

36.     Navarre is a vertically integrated, full-service platform for retailers and manufacturers.  The Company offers multi-channel sales solutions, including retail distribution programs, e-commerce fulfillment and third party logistics services.  As of September 24, 2012, the Company has 37,193,454 shares of common stock outstanding.

37.     SpeedFC was a privately-owned company, founded in 2000.  SpeedFC is a leading provider of end-to-end e-commerce services, including SaaS e-commerce platforms, tier 4 web hosting, proprietary cross-channel order management and reporting, and high performance fulfillment and customer care to online retailers and manufacturers. Jeffrey B. Zisk ("Zisk") is SpeedFC's chief executive officer and controlling stockholder. Zisk holds approximately 59.4% of the fully diluted voting power of SpeedFC.  SpeedFC was acquired by Navarre on November 20, 2012.

**The Transaction**

38.     On September 27, 2012, Navarre and SpeedFC announced a definitive agreement under which Navarre, through Merger Sub, would acquire SpeedFC for a total initial consideration of approximately $50 million, as well as additional Contingent Consideration based on SpeedFC's achievement of certain performance goals.

39.     The initial consideration is comprised of $25.0 million in cash and 17,095,186 shares of Navarre common stock, valued at approximately $25.0 million.

40.     On October 10, 2012, the Company filed the Proxy with the SEC in connection with the Annual Meeting scheduled for November 8, 2012. The Proxy announced that Navarre shareholders would be asked to vote on the Share Issuance at the Annual Meeting. The Annual Meeting was later moved to November 20, 2012 due, in part, to weather events.

41.     Furthermore, the Proxy stated that, if SpeedFC achieves certain levels of Adjusted EBITDA in 2012, SpeedFC's equity holders will receive additional consideration. The Merger Agreement initially contemplated that the Contingent Consideration would consist of up to an additional $10.0 million in cash and 3,333,333 shares of Navarre common stock. Specifically, the Proxy, in relevant part, stated:

> The Contingent Cash Payment is dependent upon SpeedFC (together with its subsidiary and the Surviving Corporation) achieving at least $6.0 million in "2012 Adjusted EBITDA." If the EBITDA threshold is met or exceeded, the Merger Agreement provides for us to pay the SFC Equityholders a cash earn out amount equal to 100% of the 2012 Adjusted EBITDA amount attained, up to a cap of $10.0 million. 2012 Adjusted EBITDA as defined in the Merger Agreement, refers to the aggregate earnings before interest, taxes on income, depreciation and amortization expenses (excluding certain expenses) of SpeedFC (together with its

subsidiary and the Surviving Corporation, as applicable) from January 1, 2012 to December 31, 2012.

The Contingent Equity Payment is dependent upon SpeedFC (together with its subsidiary and the Surviving Corporation) achieving at least $8.25 million in 2012 Adjusted EBITDA. If 2012 Adjusted EBITDA equals or exceeds $8.25 million, the Contingent Equity Payment will be earned in full; the Contingent Equity Payment is either earned in full or will be unearned and unpaid. If earned, the shares will be apportioned among the SFC Equityholders according to their SpeedFC "Percentage Interest," as defined by the Merger Agreement.

42.     However, on October 29, 2012 the parties entered into Amendment 1 to the Merger Agreement, amending the terms of the Contingent Consideration. Under the amended terms of the Merger Agreement, the Contingent Consideration instead consists of up to an additional $5.0 million in cash and 6,287,368 shares of Navarre common stock, depending on whether SpeedFC achieves certain levels of Adjusted EBITDA in 2012. A Form 8-K filed by Navarre with the SEC on October 29, 2012 announcing Amendment 1 to the Merger Agreement stated, in relevant part:

On October 29, 2012, the parties to the SpeedFC Merger Agreement entered into Amendment No. 1 to the Agreement and Plan of Merger (the "Amendment"). The Agreement and Plan of Merger are described in more detail in the Company's Form 8-K filed September 28, 2012. In general, the Amendment revises certain terms of the SpeedFC Merger regarding the structure and composition of the contingent payments. Under the Amendment, the contingent payments remain subject to the achievement of the same performance metrics, but the contingent consideration has been modified to allow for, if earned (i) the payment of up to a maximum of $5.0 million in cash consideration, with up to a maximum of $1.25 million payable in early 2013 and up to a maximum of $3.75 million (before interest of five percent per annum) payable in equal, quarterly installments beginning in late 2013 and ending on February 29, 2016 (the "Amended Contingent Cash Payment") and (ii) the issuance of up to 6,287,368 shares of our Common Stock to the SFC Equityholders, with up to 2,215,526 ("Amended First Equity Amount") shares payable in early 2013, up to 738,509 shares ("Amended Second Equity Amount") payable in late 2013

(both such share amounts being calculated based on the Average Parent Stock Price as of October 25, 2012 or $1.6926) and the original 3,333,333 shares payable at the same time as the Amended Second Equity Amount (all equity amounts together, the "Amended Contingent Equity Payment"). The Amended Contingent Cash Payment and Amended Contingent Equity Payment amounts are subject to certain escrow conditions and adjustments in connection with the measurement periods for evaluation of the achievement of financial performance metrics. As a result of the Amendment, a total of 23,382,554 shares of Navarre Common Stock could be issued in connection with the SpeedFC Merger Agreement, if all contingent amounts are fully earned.

43. On November 20, 2012, the Company held the vote on the Share Issuance at the Annual Meeting. As confirmed in the accompanying affidavit, Plaintiff did not vote on the Share Issuance as a consequence of the Board's failure to provide sufficient material information regarding the Transaction.

44. On the afternoon of November 20, 2012, the Company announced that shareholders representing a majority of the Company's outstanding shares voted to approve the share issuance. Navarre paid the initial consideration and closed the Transaction later that day.

45. In total, the maximum number of shares of common stock the Company may be required to issue in connection with the acquisition of SpeedFC, to satisfy both the initial equity payment and the Contingent Consideration obligations is 23,382,554 shares.

**The Board Breached its Fiduciary Duties by Filing a Materially Incomplete Proxy**

46. The Proxy was woefully deficient in its disclosures of material information necessary for Navarre shareholders to have rendered an informed decision while voting

on the Share Issuance at the Annual Meeting, in violation of the Board's fiduciary duty of loyalty, due care and candor to Navarre shareholders. In the Proxy, the Company sought approval of the Share Issuance from the Company's shareholders. Indeed, the Board recommended that the Company's shareholders approve the Share Issuance. However, the Board withheld material information, in its possession, about the Share Issuance and Transaction from Navarre's public shareholders, and the Proxy contains numerous material omissions and misstatements, in contravention of the Board's duty of candor and full disclosure. As a consequence of these material deficiencies, Navarre shareholders were unable to cast informed votes on the Share Issuance on November 20, 2012.

47.     Importantly, approval of the Share Issuance was required under the rules and regulations of NASDAQ and is a condition to the consummation of the Transaction.

**The Board Failed to Disclose Material Financial Information Necessary for Navarre's Public Shareholders to Determine Whether the SpeedFC Acquisition Was in Their Best Interests**

48.     The Board failed to disclose material financial information critical to Navarre's shareholders ability to cast an informed vote on the Share Issuance and determine whether the Share Issuance was in their best interests. For example, the Proxy states that SpeedFC provided the Roth with "certain financial forecasts of SpeedFC prepared by management of SpeedFC, as adjusted by management of Navarre, taking into account the [Transaction]." Disclosure of these forecasts (as well as the adjustments) is material for Navarre shareholders to independently assess SpeedFC's true value, and thus be able to make an informed vote of their shares. As SpeedFC was a private entity, these forecasts represented the single most important piece of information for Navarre

shareholders considering whether to approve the Share Issuance. In addition, these forecasts will enable Navarre shareholders to ascertain the likelihood that the Contingent Consideration will be earned.

49.     In addition, the Board failed to disclose material information regarding the anticipated synergies in the Transaction. Indeed, the Proxy states that the Board anticipated that Navarre would realize certain "cost savings and other synergies" as a result of the Transaction. The cost synergies stemming from the Transaction could be significant. The amount of the synergies could be enough to determine whether or not a shareholder supports the fairness of the Transaction. However, shareholders cannot surmise the amount of these synergies based solely on publicly available information regarding Navarre and SpeedFC. Accordingly, shareholders could not determine whether the Transaction makes sense for Navarre without additional material information regarding the total synergies inherent in the Transaction.

50.     The Proxy also fails to inform shareholders whether Navarre has the debt capacity to sustain the Transaction. The Proxy raises the specter that Navarre will be unable to repay its indebtedness following the close of the Transaction, but gives shareholders no material information with which to judge for themselves the likelihood that Navarre will be able to meet its debt obligations in light of the costs of the Transaction. Accordingly, the Board should disclose to shareholders additional material information regarding the ability of the Company to meet its financial obligations following the close of the Transaction.

51.     Additionally, the Proxy fails to disclose sufficient material information regarding the Company's ability to use its NOLs following the close of the Transaction. The Proxy states that Navarre anticipated having approximately $83.0 million in NOLs following the close of the Transaction. The Proxy also stated that Navarre's ability to utilize these NOLs might be "limited or eliminated" as a consequence of the Transaction. However, the Navarre Board has not provided shareholders with sufficient material information to enable them to judge the likelihood that Navarre may ultimately be unable to use these NOLs in the future. The loss of $83.0 million in NOLs would be a significant additional cost of the Transaction. Accordingly, the Proxy should have disclosed sufficient material information for shareholders to make an informed decision regarding the likelihood that Navarre would lose its ability to utilize these NOLs before shareholders were asked to vote on the Share Issuance.

**The Board Failed to Disclose Material Information Regarding Roth's Financial Analysis**

52.     In connection with the Transaction, Roth delivered a fairness opinion which concluded that the Transaction consideration was fair, from a financial point of view, to Navarre and its shareholders. However, the Board failed to disclose material information from the financial analyses conducted by Roth so that the shareholders can properly assess the credibility of the various analyses conducted by Roth and relied upon by the Board when determining to enter into the Transaction. In particular:

(a)     in regard to the *Precedent Transactions Analysis*, the Proxy does not disclose the transactions utilized in the analysis, the dates on which these transactions

occurred, the multiples observed for each of these transactions, the representative range of financial multiples used by Roth in the analysis, as well as the criteria Roth used in selecting the ranges of financial multiples;

(b)     the Proxy states that Roth "assumed that the consideration payable to SpeedFC [e]quityholders pursuant to the terms of the Merger Agreement will be within a range of $50.0 million to $65.0 million, calculated as (1) $25 million cash consideration, (2) the $25 million value of the stock consideration and (3) *a range of values of earn-out cash and/or stock consideration, based upon potential EBITDA of SpeedFC for 2012 valuing any such stock consideration at an assumed price of $1.50 per share.*," but does not disclose the range of values to corresponding EBIDTA amounts observed by Roth, whether Roth attached any probabilities to the different values/EBITDA amounts, and the reasons Roth valued the stock consideration at $1.50 per share;

(c)     with respect to the *Comparable Company Analysis*, the Proxy does not disclose which companies Roth used in the analysis, the multiples observed for each of these companies, the representative range of financial multiples utilized in the analysis, as well as the criteria used to select the representative ranges of multiples; and

(d)     the Proxy states that Roth "may have given various analyses and factors more or less weight than other analyses and factors, and may have deemed various assumptions more or less probable than other assumptions," but does not disclose the relative weight of the different analyses and assumptions.

53.     The above deficiencies and omissions constitute material information that is missing from the Proxy.  Absent this information, Navarre shareholders could not

judge for themselves how much stock, if any, to place in Roth's fairness opinion when considering how to vote regarding the Share Issuance at the Annual Meeting. Such information, in possession of the Defendants, is necessary for the Company's reasonable shareholders to make an informed decision.

**The Board Failed to Disclose Material Information Regarding Conflicts of Interest**

54. The Board has failed to disclose material information concerning the conflicts of interest involving Roth. Because of Roth's services as financial advisor in connection with the Transaction, Roth will receive $250,000 ($200,000 of which is contingent upon consummation of the Transaction).

55. Roth stands to make substantially more consideration as Navarre's placement agent in connection with the equity/debt financing that Navarre needs to finance the Transaction. Specifically, as stated in pertinent part in the Proxy:

> Roth has acted as financial advisor to Navarre in connection with the SpeedFC Merger, including related equity and/or debt financings (for which Roth will serve as placement agent). In connection therewith, Navarre has agreed to pay Roth an aggregate fee of $250,000, of which $50,000 was payable upon delivery of its opinion and $200,000 is contingent upon the consummation of the SpeedFC Merger. In addition, Navarre has agreed to pay Roth a placement agent fee in connection with any financing for the SpeedFC Merger (other than certain senior debt financings with Navarre's current senior lender). If the financing is for senior debt, then Navarre will pay to Roth a fee equal to 0.5% of the principal amount of such senior debt. If the financing is for junior debt, then Navarre will pay to Roth a fee equal to 2.5% of the principal amount of such junior debt. If the financing is a placement of equity securities of Navarre, Navarre will pay to Roth a fee equal to the greater of 6.5% of either the face amount of the equity securities issued or the gross proceeds received by Navarre from such equity financing. While no financing arrangement has been finalized, Navarre presently estimates that total funds of approximately $35.0 million will be needed to complete the SpeedFC Merger. Navarre also has agreed to indemnify Roth against certain

liabilities, and to reimburse Roth for certain expenses, which are related to or result from Roth's engagement.

56. Thus, as Roth stands to make substantially more money in connection with the financing of the Transaction when compared to its role as financial advisor, Roth had incentive for the Company to pay an unjustifiably *higher* price to acquire SpeedFC.

57. The Proxy is silent with regard to the material information necessary for shareholders to evaluate Roth's involvement in the events leading up to the announcement of the Transaction and the severity of Roth's conflicts.

58. Specifically, the Board should have disclosed (a) the amount of the $30 million needed to complete the Transaction that will be paid from the Company's available cash, and the amount that the Company intends to use debt/equity financing to pay for; (b) when Roth was retained as financial advisor and when Roth was retained as placement agent; and (c) whether the Board considered retaining other financial advisors and/or placement agents, and the reasons for retaining Roth to serve as both. Absent this information, Navarre shareholders were unable to ascertain the extent to which Roth's conflicts of interest may have clouded their judgment or influenced the outcome of the Roth fairness opinion. Such information is essential for a reasonable shareholder to make an informed decision regarding the Share Issuance.

**The Board Failed to Disclose Material Information Regarding Strategic Alternatives**

59. Lastly, the Board failed to disclose material information concerning the strategic alternatives considered by the Company. Specifically, the Proxy states that the Board "considered management's review of potential strategic opportunities and

determined that the value offered in connection with the [Transaction] was more favorable to [the Company's] shareholders than the potential value that might have resulted from any other strategic opportunities reasonably available to [the Company]."

60.    The Board should disclose what other potential strategic opportunities were reviewed, and the reason the Board believed the Transaction was more favorable than each alternative.

61.    This material information is important in allowing Navarre shareholders to make an informed judgment as to whether the Share Issuance and Transaction are in the best interests of the Company, or whether alternative routes would be more beneficial. Without the disclosure of this material information, shareholders cannot understand the relative benefits of the Transaction as compared to other strategic alternatives and, accordingly, could not cast an informed vote at the Annual Meeting.

62.    Plaintiff has submitted herewith the O'Connor Affidavit.  O'Connor has opined, *inter alia*, that Navarre's shareholders could not make an informed decision in voting their shares regarding the Share Issuance without, at a minimum, the disclosures identified in ¶¶ 48-51, 52(a), and 52(c) above.  *See* O'Connor Affidavit, ¶¶ 6-12.

63.    Plaintiff has further submitted herewith an affidavit affirming that he did not vote at the Annual Meeting and does not believe that the Individual Defendants disclosed enough information to allow them to make an informed decision regarding whether or not to support the Share Issuance.

64.    Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent irreparable injury that Company shareholders will continue to suffer absent judicial

intervention. Plaintiff therefore asks this Court to rescind the results of the November 20, 2012 vote regarding the Share Issuance, unwind the Transaction, order the dissemination of the omitted material information identified herein, and require an informed re-vote regarding the Share Issuance.

## CLAIMS FOR RELIEF

### COUNT I
### Breach of Fiduciary Duty
### (Against the Individual Defendants)
### (brought by Plaintiff on behalf of Himself and the Class)

65.     Plaintiff repeats all previous allegations as if set forth in full herein.

66.     The fiduciary duties of the Individual Defendants in the circumstances of the Share Issuance and the Transaction require them to disclose to Plaintiff and the Class all material information necessary for Navarre shareholders to make an informed decision.

67.     As set forth above, the Individual Defendants have breached their fiduciary duty through materially inadequate disclosures and material disclosure omissions.   This breach of fiduciary duty made it impossible for the Company's shareholders to make an informed decision regarding the Share Issuance.

68.     The Individual Defendants omitted material information in the Proxy which courts regularly hold must be provided to shareholders, such as Plaintiff and the Class, well in advance of a shareholder vote.

69. As a result, Plaintiff and the Class members are being harmed irreparably. Plaintiff and the Class have suffered and will suffer substantial damages as a result of Defendants' conduct.

70. Plaintiff and the Class have no adequate remedy at law.

## COUNT II
### Aiding and Abetting
### (Against SpeedFC and Merger Sub)
### (brought by Plaintiff on behalf of Himself and the Class)

71. Plaintiff repeats all previous allegations as if set forth in full herein.

72. As alleged in detail above, Defendants SpeedFC and Merger Sub have aided and abetted the Individual Defendants' breaches of fiduciary duties.

73. As a result, Plaintiff and the Class members are being damaged.

74. Plaintiff and the Class have no adequate remedy at law.

**WHEREFORE**, Plaintiff demands judgment against Defendants jointly and severally, as follows:

(A) Declaring this action to be a class action and certifying Plaintiff as the Class representative and his counsel as Class counsel;

(B) Declaring that the Individual Defendants breached their fiduciary duty of candor to Navarre's shareholders, including Plaintiff and the Class;

(C) Declaring that SpeedFC and Merger Sub aided and abetted the Individual Defendants in breaching their fiduciary duties;

(D)    Awarding Plaintiff and the Class equitable relief, including rescission of the shareholder vote on the Share Issuance at the Annual Meeting, entry of an order unwinding the now-consummated Transaction, and entry of an order scheduling a new shareholder vote on the Share Issuance at the appropriate time;

(E)    Awarding Plaintiff and the Class appropriate damages (including rescissionary damages) plus pre- and post-judgment interest;

(F)    Awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

(G)    Granting Plaintiff and the other members of the Class such further relief as the Court deems just and proper.

Dated:  December 20, 2012                Respectfully submitted,

**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**


By:  /s/  Karen H. Riebel
       Gregg M. Fishbein, #202009
       Karen H. Riebel, #219770
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401-2159
Telephone: (612) 339-6900
Facsimile: (612) 339-0981

**POMERANTZ GROSSMAN HUFFORD
DAHLSTROM & GROSS LLP**
Mark I. Gross
Jeremy A. Lieberman
Gustavo F. Bruckner
Samuel J. Adams
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: 212-661-1100
Facsimile: 212-661-8665

**LEVI & KORSINSKY, LLP**
Shannon L. Hopkins, Esq.
30 Broad Street, 24th Floor
New York, New York 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171

*Attorneys for Plaintiffs*